Staples, J.,
delivered the opinion of the court.
There can be no doubt that the acts done by the .guardian of the husband, in this case, if done by the husband himself, would be held to be a reduction into possession of the wife’s choses in action. After the intermarriage of Mrs. Ware, the appellant, with Cincinnatus J. Ware, the administrator of her father’s estate delivered to the guardian of Cincinnatus J. Ware, certain bonds in payment or satisfaction of Mrs. Ware’s distributive share in that estate. These bonds, as is conceded, the guardian surrendered to the obligors respectively, taking in their place others payable to himself as guardian. Upon these he afterwards instituted suits, recovered judgments, sued out executions, which were levied upon the property of the debtors respectively. Forthcoming bonds were given and forfeited, and executions again issued and levied, but no sales were made of the property, in consequence of the stay laws passed in the early part of the war. All this occurred in the lifetime of Cincinnatus J. Ware, and during his minority. He was killed in battle while in the public service and before he attained twenty-one years of age. It is not seriously controverted, that these acts were sufficient to extinguish the entire in *672 terest of Mrs. Ware in the subject matter of controversy, if it be competent for a guardian of an infant husband to reduce into possession for the husband, the wife’s dioses in action. The learned counsel for the appellant takes the ground that the guardian has no such power; that it is a marital right personal to the husband, which he alone can exercise, and which he may exercise or not, at his pleasure; and in this case, the husband never having elected to reduce the wife’s choses into possession, and not having ratified the acts of the guardian, whatever was done by the latter was without authority, and wholly ineffectual to divest the wife’s interest. This point has been elaborated with great force and ingenuity in the printed brief of the counsel for the appellant. And it is to this our attention must be chiefly directed.
It is well settled, that, as to the choses in action of the wife, marriage is only a qualified gift to the husband, upon condition that he gets possession during the coverture; for if he die before the wife, without having gained such possession, she, and not his personal representative, will be entitled to them: but it is equally true, and has been so expressly held by this court, that the marital right, though it confers no absolute title to the property while a chose in action, yet attaches to the chose in action—vests an appreciable interest therein—gives the right to make the property of which it is the representative absolutely that of the husband; and this right, vendible and assignable, is the subject of sale or gift to the extent of the husband’s interests. When the assignment is without consideration, as in case of a gift, if the husband dies before the chose is reduced into possession, the legal right of the wife of survivorship attaches and defeats the right of the assignee. If the assignment is special *673 for value, it is considered in many cases a quasi reduction into possession, which defeats the legal right of survivorship, and the assignee is only subject to the wife’s equity to a settlement. See Dold’s trustee v. Geiger’s adm’r, 2 Gratt. 98-110. In that case, the wife being entitled to a distributive share in her father’s estate, it was agreed by the husband, who was then insolvent, it should be settled upon the wife, and it was accordingly settled to her separate use. Although the husband thus declined to reduce the property into possession, and expressly waived his marital right thereto, this court was unanimously of opinion, that it was liable to the claims of the husband’s creditors, and might be subjected to their payment, nothwithstanding the settlement upon the wife.
It will thus be seen that the husband has an appreciable interest in the wife’s choses in action, which may be the subject of sale, gift, assignment or release, and may be appropriated by his creditors to the payment of their claims. See upon this point Yerby and wife v. Lynch & als., 3 Gratt. 439, 474, 477, 493-4, 567-8.
This being so, it is difficult to understand why the chose is not subject to the ordinary rules and incidents applicable to any other estate or property of the ward which may be brought under the control and supervision of the guardian. Although the guardian has no beneficial interest in the estate of his ward, still his authority is coupled with an interest, and is not barely an office. In respect to the real estate, he may make a lease for years, upon which ejectment may be maintained; he may have an action of trespass against a stranger, in his own name, for spoiling the grass; he may have a writ of right of ward, and recover the land and damages, as well as the body of the ward; he *674 may assign dower and institute proceedings for partition. Truss v. Old, 6 Rand. 556.
In respect to the personal estate, his powers are very extensive. His authority extends to the collection of debts and other choses in action belonging to the ward; to the receipt of legacies and distributive shares, and granting acquittances for the same. He may assign mortgages, compromise and submit to arbitration, and in fine, do whatever is necessary to protect the ward’s interest.
In Hunter v. Lawrence’s adm’r & als., 11 Gratt. 111, a bond given to an executor was transferred by him to a guardian as part of the ward’s estate. This court held, that whatever interest the ward had in the bond was subject to the control of the guardian, who may receive the money thereon, if voluntarily paid; may sue for it in the common law courts in the name of the executor for his own use as guardian, and cannot be prevented by the executor; or he may sell and transfer the bond to a bona fide purchaser.
Seeing that the guardian is thus clothed with very extensive powers in respect to the personal estate of the ward, conferred for the benefit of the latter, he ought, for the same reason, to have the power of making available the ward’s interest in the wife’s personal property. If the guardian is not authorized to do .so, who is ?—not the wife certainly, because she is under the disability of coverture; nor the ward himself, he being under the disability of infancy. The result would be the loss of the debt or other interest, in many instances, for want of legal authority to collect or secure it. And however great might be the necessities of the husband and wife, and however ample the estate of the wife, there would be no hand to receive and apply it to their maintenance and support. The *675 same difficulties must arise with respect to the ordinary personal effects of the wife—such as horses, jewels, and the like—in the possession of third per-' sons. ÍTo title vests in the husband until he takes them in his possession; but according to the theory of the learned counsel, he, being an infant, cannot elect to divest the wife’s interest; and as the guardian is incompetent in such case to elect for him, the property must remain beyond the control of the husband or guardian until the former arrives at twenty-one years of age and makes his election to reduce it to his possession. It is no answer to this view to say that a •court of equity might give relief. In the large majority of cases of goods and chattels belonging to the wife, and ehoses in action due her, no ground could be plausibly suggested for the jurisdiction of a court of chancery. Besides, according to the theory advanced, •the right to reduce the wife’s ehoses to possession is a marital right personal to the husband, to be exercised by him and him alone. ,
In the case before us, the personal representative of the estate of Hughes, the wife’s father, might have paid the guardian the wife’s distributive share in money instead of bonds—and such a payment would have been as valid as a payment made to an adult husband. If the administrator was willing to transfer, and the guardian to accept, solvent bonds, in discharge of the wife’s interest, it was equally a good payment. There is no doubt that the guardian might at once have received payment from the obligors in these bonds. If he had done so, and loaned the money to third persons, or even to the same obligors, the transaction would have been substantially the same as that before us. In either case, it was the exercise of a rightful authority, and was effectual to place the fund *676 under Ms control for the exclusive use and benefit of' the husband. In every view that may be taken, the question is free from all difficulty.
The last point to be considered is, whether the appellant has a valid claim to a settlement upon her of the whole or any part of the fund. The rule on that subject in this state is settled under repeated decisions of this court.
It is thus laid down in Poindexter and wife v. Jeffries, 15 Gratt. 363-869: Whenever the husband, in right of his wife, has obtained possession of and title to her property, Ms own title jure mariti becomes complete, and the property to the extent of his title, is subject to his right of disposition, and to the claims of creditors, like any other property of his otherwise acquired. And when the property, by being reduced into the husband’s possession, has once been released from the wife’s equity, it can never again be subjected to it. If" it be recoverable at law, and the aid of a court of' equity be not invoked to recover it, her equity does not exist.
Tested by this rule, it is manifest that the appellant is not entitled to a settlement' out of the fund which is-the subject of controversy. That fund the personal representative of the husband was proceeding to collect at law, under judgment and execution, when this-bill was filed by the appellant requiring him to account with and pay over to her such portion of it as might constitute a fair settlement. If the appellant’s interest be limited to her distributive share in her father’s estate, that interest was satisfied by the transfer of the bonds to the guardian. If it be.regarded as extending-to the bonds so transferred, that interest was divested by the execution of the new bonds payable to the guardian, followed by the judgment and execution in *677 the name of the guardian. Whatever, therefore, may have been the nature of the wife’s chose, it was reduced into the possession of the husband through the guardian in the lifetime of the former. The property being thus released from the appellant’s equity cannot now be subjected to it. See opinions of judges in Yerby v. Lynch, 3 Gratt. 439. See also Marcum’s adm’r v. Hudnall, 14 Gratt. 369, 380; 3 Rob. Prac. 204. For these reasons the decree of the circuit court must be affirmed.
Decree arrirmed.